# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL AUCTION AND APPRAISAL, LLC., | : : : | Civil Action No. 1:09-CV-1639 |
| Plaintiff, | : : | |
| v. | : : | (Magistrate Judge Carlson) |
| R&M METALS, INC., | : : : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This case, which comes before the Court on motions for summary judgment filed by the Plaintiff (Docs.26and 32), involves hotly contested factual disputes concerning the existence and terms of an alleged oral agreement between the parties to act as partners on a $740,000 salvage and scrap operation contract. This dispute and these motions underscore two basic legal truths: First, they highlight the legal peril created by reliance upon alleged oral agreements in complex commercial transactions; and, second, they illustrate the limits of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure as a vehicle for resolving alleged oral contractual claims that turn on competing recollections of disputed conversations that are not reduced to writing.

Because we find that disputed, and material, issues of fact preclude the entry of judgment for any party as a matter of law in this case, we will deny these motions for summary judgment.

## II. STATEMENT OF FACTS[1]

The Plaintiff, International Auction Appraisal Services, LLC (hereafter "IAAS") is an industrial auction company, which specializes in assisting industrial concerns which are downsizing in disposing of equipment and other fixed assets. (Doc. 32, Ex.B, Loeser dep. pp. 10-11). In this industry, IAAS is primarily involved in the marketing and sales of surplus equipment and machinery for these other industrial concerns. Therefore, IAAS frequently will "team up" (id.) with some other salvage or scrap business to contract the actual removal and storage of machinery, equipment and scrap materials from various industrial sites, while it sells these items. ( Id. pp. 31-33.)

In the summer of 2009, IAAS, through its managing director, Alan Loeser, learned of a business opportunity involving a company called Hanesbrands, Inc. This

---

[1] This limited factual statement is derived from the submissions of the parties and is presented solely for the narrow purpose of addressing the threshold issue raised by the pending summary judgment motions regarding whether there are material issues of fact which preclude summary judgment. Nothing in this recital is intended to, or should be construed as, a factual finding on the ultimate issues which may be decided by the Court at a later date.

2

business proposal related to a facility formerly operated by Hanesbrand, Inc., in Eden, North Carolina. The proposal entailed acquiring, scrapping, and selling approximately $750,000 worth of equipment and metals owned by Hanesbrand at this Eden, North Carolina plant.(Id.)

IAAS and Loeser were interested in pursuing this business opportunity, and Loeser contacted an Iowa-based scrap metal firm with which he was familiar, R&M Metals, to determine if R&M would "team up" with IAAS on this salvage job. (Id.) Towards that end, Loeser, on behalf of IAAS, contacted R&M Metals' President, Roger Tompkins in the summer of 2009, and "told [Tompkins] there was an opportunity, there was a lot of stainless steel [to salvage] and [IAAS] needed help and [asked] would he be interested in teaming up with me." (Id. pp. 52.)

Tompkins, on behalf of R&M Metals, expressed an interest in teaming up on this project. Accordingly, Tompkins and Loeser met in North Carolina in the summer of 2009 to tour the Hanesbrand facility, and discuss a bid to purchase, scrap and re-sell this inventory of equipment, machinery and other metals. ( Id., Exs. B and E.) Following this tour, and conversations between Loeser and Tompkins, in July of 2009 a written bid was submitted to Hanesbrand to perform this work. That bid was "submitted on behalf of IAAS and Roger Tompkins of R&M Metals, Inc," ( Doc.32 Ex. A) and listed Loeser and Tompkins as "partners in this quote". (Id.) Under the

terms of the written bid, the partners would purchase and remove specified machinery and scrap from the Hanesbrand facility, paying $762,511.00 for these assets in a series of installment payments. (Id.)

Having been identified as "partners"[2] in this July 2009 bid form, the commercial relationship between IAAS and R&M Metals dissolved into mutual recriminations by the end of August 2009. These recriminations, and this lawsuit, arose out of what is now presented as a basic, fundamental and essentially factual dispute between the parties regarding the meaning of their partnership, a partnership arrangement which was largely embodied in discussions between Loeser and Tompkins, but which was never reduced to writing.

For his part, Loeser contended that IAAS and R&M Metals were only partners in the formulation of a bid to Hanesbrand. (Doc. 32, Ex. B.) Loeser asserts that it was his expectation that, if the bid was successful, IAAS would then sub-contract the actual salvage and scrap removal work to some other company through a bidding process which would involve R&M Metals and other scrap metal removal companies. ( Id.) Because R&M had assisted in the development of IAAS' original bid, Loeser

---

[2] While the Plaintiff acknowledges that IAAS and R&M are described as"partners'" in this bid form, the Plaintiff alleges that the form was largely drafted by Hanesbrand. In one of many factual disagreements in this case, R&M disputes this characterization of the form, and IAAS' characterization of their business relationship.

on behalf of IAAS anticipated that Tompkins and R&M would be given a chance to match the lowest competitive bid IAAS received to perform this salvage work, but it is the Plaintiff's position that IAAS never agreed with R&M to guarantee a binding commitment that this project would be given to R&M Metals to perform if IAAS was successful in bidding on this work.

In contrast, Tompkins describes the partnership between IAAS and R&M Metals in strikingly different terms. (Doc. 34, Exs. C and E.) According to Tompkins the oral understanding between the parties was that IAAS and R&M were full partners in this entire project. (Id.) Under the terms of this oral agreement, as described by Tompkins, Tompkins would be reimbursed for the actual costs of the salvage and scrap removal operation, costs which he estimated at between $100,000 and $150,000. ( Id.) After these costs were recovered, the profits from the salvage, scrap and sale of these assets would then be divided on a 50-50 basis between IAAS and R&M Metals. (Id.)

On the basis of what the parties now contend are these differing, and undocumented, views regarding the nature of their agreement, R&M and IAAS submitted this bid proposal to Hanesbrand in July 2009 "as partners in this quote". ( Doc. 32, Ex. A.) After being notified that their bid had been accepted, Loeser attests that IAAS commenced negotiations with Hanesbrand on the details of this scrap and

5

salvage contract. (Doc. 32, Ex. B.) According to Loeser, he took the lead in these negotiations. (Id.) Tompkins and R&M did not meet directly with Hanesbrand officials during the negotiations of this final agreement, deferring instead to Loeser and IAAS.(Id.)

These negotiations culminated with exchange of a letter agreement between IAAS and Hanesbrand between August 17 and 19, 2009. (Doc. 32, Ex. C.) This letter agreement was drafted by Loeser on behalf of IAAS, and made no mention of IAAS' initial July 2009 bid partner, R&M Metals. Upon receiving the signed agreement from Hanesbrand on August 19, Loeser then wrote an e-mail to Tompkins, stating as follows:

> Good afternoon Roger. Deal is done  monies wired. Tomorrow Patty Britton [an IAAS employee] will be in touch to set an agreement in place between our two companies. My plan is to be there Monday. Hope yours is the same. Looking forward to working with you. All the best. Alan

( Doc. 32,  Ex. D.)

Despite the optimistic tone of this e-mail, the relations between these "partners in this quote bid" almost immediately broke down into an acrimonious disagreement over the existence, terms and nature of any prior oral agreements that IAAS and R&M had reached in July. Indeed, it appears that this disagreement swiftly escalated, with Tompkins' counsel sending a letter to IAAS on August 21, 2009, outlining the terms

of R&M Metals' understanding of their oral contract, (Doc. 34, Ex. D), followed four days later on August 25, 2009, by the filing of this civil action by IAAS against R&M Metals. (Doc. 1.) Thus, within six days of Loeser's e-mail announcement that the "deal is done", IAAS and R&M Metals were embroiled in litigation.

### III. PROCEDURAL HISTORY

On August 25, 2009 IAAS commenced this action by filing a complaint in federal court. (Doc. 1.) In its complaint, IAAS sought, *inter alia*, a declaratory judgment that no enforceable contract existed between itself and R&M Metals. (Id. Count 1.)[3] R&M Metals responded to this complaint on September 29, 2009. (Doc. 7.) In its answer, R&M denied IAAS' factual assertions regarding the lack of an oral agreement between the parties; asserted its views regarding the terms and conditions of the oral agreement it insisted existed between the parties; and lodged counterclaims against IAAS based upon breach of that contract, and promissory estoppel. (Id.)

The parties then engaged in a course of discovery which focused on the competing recollections of Tompkins and Loeser regarding their discussions, dealings and agreements in July and August 2009. (Compare, Doc. 32, Ex. B with Doc. 34, Exs. C and E. ) This discovery sharpened, but did not resolve, the fundamental factual

---

[3]IAAS also initially filed a claim for tortious interference, alleging that R&M unlawfully interfered with its contact with Hanesbrand, but has subsequently abandoned this claim.

disputes between the parties. At the close of discovery, IAAS filed motions for summary judgment (Docs. 26 and 32) seeking a declaration as a matter of law that there was no enforceable agreement between the parties. R&M Metals has opposed this motion citing what it contends are disputed material issues of fact concerning the existence, scope, nature and terms of the agreement between the parties. The motions have been fully briefed by the parties, (Docs. 33, 34 and 35) and are now ripe for resolution.

Because we find that there are unresolved and material factual disputes between the parties, we will deny the motions for summary judgment, and direct the parties to proceed to trial as previously scheduled by the Court.

IV. **DISCUSSION**

A. **Summary Judgment Standard of Review**

IAAS has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a

trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint. Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). The evidence must be viewed in the light most favorable to the nonmovant. See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest

solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

### B. Legal Principles Governing Construction of Contracts

As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). In this case, in contrast to the parties' disparate views regarding the factual background of this dispute, there is significant consensus among the parties concerning the controlling legal principles which govern

11

our resolution of this contract dispute. Thus, all parties concede that under Pennsylvania law, agreements must satisfy the following three requirements to be enforceable: (1) both parties must manifest an intent to be bound by the terms of the agreement; (2) the terms must be sufficiently definite to be enforceable; and (3) the agreement must be supported by consideration. ATACS Corp. v. Trans World Commc'ns., Inc., 155 F.3d 659, 666 (3d Cir. 1998) (internal citations omitted).

In making this determination, the pivotal inquiry is whether the parties "manifested an intention to be bound by [the agreement's] terms and whether the terms are sufficiently definite to be specifically enforced." ATACS Corp., 155 F.3d at 665(internal citations omitted). Thus, in order to form a contract there must be an offer, acceptance, consideration, or mutual meeting of the minds. Aircraft Guaranty Corp. v. Stro-Lift, Inc., 103 F. Supp. 2d 830, 835-36 (E.D.Pa. 2000) (citing Jenkins v. County of Schuylkill, 658 A.2d 380,383 (Pa. Super. 1995). "A 'meeting of the minds' occurs when both parties mutually assent to the same thing, as evidenced by an offer and acceptance." Id. (citing Management Systems, Inc. v. Consolidated Recycling and Transfer Systems, Inc., 617 A.2d 1140, 1146 (Pa. Super. 1996).

Under Pennsylvania law, the same basic principles governing the interpretation of contracts apply with equal force to written and oral agreements. Thus, when applying Pennsylvania law:

> To establish that it had an oral contract [a party] must show that: 1) both parties manifested an intention to be bound by the terms of the agreement; 2) the terms of the agreement were sufficiently definite to be specifically enforced; and 3) there was mutuality of consideration. Redick v. Kraft, Inc., 745 F.Supp. 296, 300 (E.D.Pa.1990) (applying Pennsylvania law). The requirement of consideration is satisfied if there was a benefit conferred on the promisor or a detriment to the promisee and "an act, forbearance or return promise bargained for and given in exchange for the original promise." Channel Home Centers, Grace Retail v. Grossman, 795 F.2d 291, 299 (3d Cir.1986). [Furthermore], "The existence and terms of an oral contract must be established by clear and precise evidence." Redick, supra, 745 F.Supp. at 300. Whether a contract exists is a factual issue for the trier of fact to determine unless there is no genuine issue of material fact.

York Excavating Co., Inc. v. Employers Ins. of Wausau, 834 F.Supp. 733, 740 (M.D.Pa.1993).

In determining whether the parties "manifested an intention to be bound by [an agreement's] terms and whether the terms are sufficiently definite to be specifically enforced," ATACS Corp., 155 F.3d at 665(internal citations omitted), Pennsylvania courts agree that "[a]n agreement to agree is incapable of enforcement" Highland Sewer and Water Auth. v. Forest Hills Municipal Auth., 797 A.2d 385, 390 (Pa. Cmwlth. 2002). Thus, the mere statement of an aspirational goal to reach some future agreement is not an enforceable contract in Pennsylvania. Channel Home Centers v. Grossman, 795 F.2d 291, 298 (3d Cir. 1986). However, when construing what may be inartfully crafted or incomplete agreements, it is also clear that"the omission of an

essential term in a contract, such as price, does not [necessarily] vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of the agreement are sufficiently definite." ATACS Corp., 155 F.3d at 667. Quite the contrary, "it is well settled that the terms of a contract need not be expressed with complete exactness," Conrail v. Canada Malting Co., No. 98-5984, 2000 U.S. Dist. LEXIS 1273, at *26 (E.D. Pa. Feb. 10, 2000) and "Courts generally disfavor the destruction of contracts [merely] because of uncertain terms." Id. (citations omitted). Applying these principles, when confronted with an inartful or incomplete agreement courts are encouraged to "if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained.'" Id. (citations omitted). However, in all instances where we are applying Pennsylvania law and interpreting oral agreements, " 'The existence and terms of an oral contract must be established by clear and precise evidence' Redick, supra, 745 F.Supp. at 300, [and] whether a contract exists is a factual issue for the trier of fact to determine unless there is no genuine issue of material fact."York Excavating Co., Inc. v. Employers Ins. of Wausau, 834 F.Supp. at 740.

Furthemore, in some instances where parties have made covenants to one another which fall short of a contract, the doctrine of promissory estoppel may also apply. Under Pennsylvania law promissory estoppel is appropriate in "situations

where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing the promise." Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416 (3d Cir. 1990). Promissory estoppel allows the court to enforce a promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee; (2) the promise does induce action or forbearance by the promisee; and (3) injustice can only be avoided by enforcing the promise. Carlson, 918 F.2d at 416.

      **C.**    **In This Case Disputed Material Issues of Fact Preclude Summary Judgment on Any Claims Involving the Enforcement of an Alleged Oral Contract or Promissory Estoppel**

These principles governing the interpretation of oral contracts under Pennsylvania law necessarily limit the availability of summary judgment relief in such cases. The interpretation of alleged oral agreements typically turns on matters of individual recall of past events, and is subject to both the vagaries of human recollection, and the limitations of the spoken word as a vehicle for communicating subtle, complex concepts. Such disputes are, therefore, commonly bound up in questions of competing recollections, and are often defined by considerations of witness credibility. For these reasons, federal courts have frequently declined

invitations to grant summary judgment on the questions concerning the existence and interpretation of alleged oral contracts where the evidence reveals material factual disputes between the parties, finding that such disputes present matters of fact rather than questions of law. See, e.g., Hiller v. Franklin Mint, Inc., 485 F.2d 48 (3d Cir. 1973); JML Industries Inc. V. Pretium Packaging, LLC., No. 04-2552, 20087 WL 61061 (M.D. Pa. Jan. 5, 2007); W. Kramer Associates, Inc. v. Senior Campus Living, LLC, No. 00-1511, 2001 WL 882968 (E.D. Pa. April 26, 2001); Leonard Pevar Co. v. Evans Products Co., 524 F.Supp. 546 (D.Del. 1981).

This is one such case. The parties here have skillfully advanced their competing views regarding the legal significance of the business dealings between IAAS and R&M Metals in the summer of 2009. This skillful presentation leaves us convinced that the parties' disparate positions concerning the existence, scope, nature and terms of any alleged oral agreement involve essentially factual determinations which fall beyond the province of a motion for summary judgment under Rule 56.

Indeed , this appears to be a case which is replete with disputed material issues of fact. These factual disputes between Loeser and Tompkins relate to matters which lie at the heart of this lawsuit; namely, whether any oral agreements were reached by the parties in the summer of 2009, and what the enforceable terms of those alleged agreements might have been. On these factual disputes, the positions of the parties

cannot be reconciled without engaging in findings of fact, a task which cannot be undertaken in a summary judgment setting and will instead fall to this Court in this non-jury proceeding at a different time and place.

Since this matter entails what is essentially a factual dispute between the parties, it is not susceptible of resolution on a motion for summary judgment. Instead, this dispute will be schedule for prompt resolution at trial.

## V. Conclusion

For the foregoing reasons the Plaintiff's motions for summary judgment (Docs. 26 and 32) are DENIED. A separate order scheduling pre-trial proceedings in this case shall issue.

So ordered this 20th day of October, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
